IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ROBERT H. MOYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:21-cv-00046 (AJT/MSN) |
| SHIRLEY CONTRACTING COMPANY, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert H. Moyer (the "Plaintiff" or "Moyer"), by counsel, has sued Defendant

Shirley Contracting Company, LLC (the "Defendant" or "Shirley Contracting") for age

discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29

U.S.C. §§ 621 *et seq*. (Count I).  [Doc. No. 1] (the "Complaint" or "Compl.").  The parties have

filed Cross Motions for Summary Judgment.  [Doc. No. 21] ("Plaintiff's Motion" or "Pl.'s

Mot."); [Doc. No. 23] ("Defendant's Motion" or "Def.'s Mot.") (collectively, the "Motions").  A

hearing was held on the Motions on July 14, 2021, following which the Court took the Motions

under advisement.  For the reasons stated below, Plaintiff's Motion is **DENIED**; Defendant's

Motion is **GRANTED**; and this action is **DISMISSED**.

### I.   BACKGROUND

Unless stated otherwise, the following facts are undisputed:[1]

1.   Plaintiff visited the Equal Employment Opportunity Commission ("EEOC") Richmond

Field Office in person in August 2019 to discuss filing a Charge of Discrimination against Shirley

---

[1] In the Motions, the parties have addressed only the facts relating to the timeliness of Plaintiff's filing of his
Complaint and not those pertaining to the substance of Plaintiff's age discrimination claim.

Contracting.  [Doc. No. 23-1] ("Defendant's Memorandum" or "Def.'s Mem.") at 4; [Doc. No. 29] ("Plaintiff's Opposition" or "Pl.'s Opp'n") at 2.

2.    The Charge of Discrimination was electronically signed on August 12, 2019, but Plaintiff does not recall if he reviewed it before he signed it or how he electronically signed the Charge of Discrimination.  Def.'s Mem. at 4; Pl.'s Opp'n at 2.

3.    Plaintiff's claim with the EEOC was transferred from Richmond to Washington, D.C. and assigned to EEOC Investigator Magda Gomez for investigation.  Def.'s Mem. at 4; Pl.'s Opp'n at 2.

4.    The EEOC Charge Detail Inquiry report pertaining to Plaintiff's charge, which is an investigative file created and maintained by the EEOC as part of its regular practice [Doc. No. 23-4] at 4-10, indicates that in November, 2019, there were contacts between the EEOC and the Plaintiff concerning the status of his charge including a telephone conversation with the Plaintiff on November 12, 2019, during which he was advised that the "tentative recommendation would be submitted based on [the assigned staff member's] analysis.  He was told he could expect to receive a NRTS allowing him to file a suit 90 days upon receipt;"  [Doc. No. 23-4] at 10 ("Subject 291 - Recommendation to close case").

5.    On November 14, 2019, Mindy Weinstein signed a Dismissal and Notice of Rights Letter ("NRTS Letter"), which stated that the EEOC would not be pursuing Plaintiff's claims.  Def.'s Mem. at 5; Pl.'s Opp'n at 3.  The NRTS Letter contains Plaintiff's correct address, "12322 Jackson River Road, Monterey, VA 24465," in the top left of the letter and is stamped above the area annotated as "Date Mailed" with "NOV 14 2019."  Def.'s Mem. at 5; Pl.'s Opp'n at 5; *see also* [Doc. No. 22-1] at 6 (the NRTS Letter).

6.    Defendant's HR Manager and attorney of record received the NRTS Letter on November 20, 2019.  Def.'s Mem. at 6; Pl.'s Opp'n at 5-6.

7.    Plaintiff asserts that he never received the NRTS Letter; and in order to determine the status of his case, Plaintiff spoke with an EEOC employee in or around March 2020 and learned that his case had been dismissed.  Plaintiff also asserts that during that conversation (1) the unnamed employee informed Plaintiff that a letter regarding the dismissal had been sent to an address in Maryland, which is not Plaintiff's home of record; (2) Plaintiff requested that a copy of the letter be sent to his address in Virginia and provided his address to the employee; and (3) the employee confirmed that the EEOC records reflected Plaintiff's correct address in Virginia, as Plaintiff had given him.  Def.'s Mem. at 6; Pl.'s Opp'n at 6; [Doc. No. 22] ("Plaintiff's Memorandum" or "Pl.'s Mem.") at 4.

8.    Plaintiff did not attempt to contact the EEOC again after the call in March 2020 until July 14, 2020.  Def.'s Mem. at 6; Pl.'s Opp'n at 7; *see also* [Doc. No. 23-3] at 19-21.

9.    Plaintiff's phone records indicate that between July and November 2020, there were phone calls totaling approximately 279 minutes to numbers associated with various EEOC representatives.  Pl.'s Mem. at 5; [Doc. No. 31] ("Defendant's Opposition" or "Def.'s Opp'n") at 5.  Except as related herein, Plaintiff does not recall the substance of any of those calls or whether he was able to actually speak with anyone.

10.   During his deposition, Plaintiff testified that he had retained an attorney, Jonathan Nelson, for a separate matter to assist him with securing unemployment benefits.  Even though this representation ended in or around December 2019, Plaintiff spoke with Mr. Nelson on June 26, 2020, August 5, 2020, and November 16, 2020.  Plaintiff does not recall the substance of these calls.  Def.'s Mem. at 8; Pl.'s Opp'n at 9.

3

11.  On September 3, 2020, Plaintiff's phone records reflect an incoming call from the EEOC that lasted 17 minutes.  Plaintiff believes, but is not sure, that this call may have been from Cheri Allen of the EEOC and does not remember the substance of this call.  Def.'s Mem. at 7; Pl.'s Opp'n at 8.

12.  After speaking with Cheri Allen from the EEOC on October 27, 2020, Plaintiff received an email from Cheri Allen, which stated: "As you requested your file was provided under Section 83.  The hard copy of the Notice of Right to Sue will be mailed to your home address."  This email included an electronic version of Plaintiff's file with the EEOC, including the NRTS Letter. *Id.*

13.  Plaintiff received a hard copy of the NRTS Letter by mail at his Virginia residence on November 6, 2020 in an envelope postmarked October 28, 2020.  Pl.'s Mem. at 2; Def.'s Opp'n at 3.  During his deposition, Plaintiff provided the original envelope and the copy of the NRTS Letter he attached to the Complaint.  The copy of the NRTS Letter was folded back into the envelope and a photograph was taken.  Plaintiff agreed that this photograph represented how the envelope and NRTS Letter appeared when he received it—i.e. a windowed envelope showing his address in the window.  Def.'s Mem. at 7-8; Pl.'s Opp'n at 9.

14.  On November 16, 2020, Plaintiff faxed Mr. Nelson a copy of the NRTS Letter marked "Received 11/6/2020."  Pl.'s Mem. at 3; Def.'s Opp'n at 4.

15. On January 14, 2021, Plaintiff, through counsel other than Mr. Nelson, filed this action for age discrimination pursuant to 29 U.S.C. §§ 621(a)(1), seeking, *inter alia*, lost wages and benefits, liquidated damages, reinstatement of his job, and attorney's fees and expenses.  Compl. at 10-11.  Plaintiff claims this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(4).

4

On February 16, 2021, Defendant filed its Motion to Dismiss [Doc. No. 5] pursuant to Federal Rule of Civil Procedure 12(b)(6) and a hearing was held on March 24, 2021 [Doc. No. 14]. The Court ruled that since both parties relied on material outside of the pleadings, the Motion to Dismiss would be "treated as a motion for summary judgment as to the timeliness of Plaintiff's Complaint" and allowed the parties to "conduct discovery during the period ending on June 1, 2021, limited to the issue of timeliness, with discovery otherwise stayed." [Doc. No. 17] at 1-2. The parties filed supplemental briefings in support of their respective positions. *See* Pl.'s Mem.; Def.'s Mem.; Pl.'s Opp'n; Def.'s Opp'n. On July 14, 2021, the Court held another hearing on the parties' Cross Motions for Summary Judgment [Doc. Nos. 21, 23], following which it took the Motions under advisement.

## II.    LEGAL STANDARD

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, to defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is

a genuine issue for trial." *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## III.   ANALYSIS

### A. Timeliness

Defendant contends that Plaintiff did not timely file suit as to his discrimination claim and his Complaint should be dismissed as untimely. Plaintiff contends, however, that his claim is timely because the Envelope in which he received the NRTS Letter was postmarked October 28, 2020 and actually received on November 6, 2020; and that he filed this action within 90 days of either date.

A plaintiff alleging claims of employment discrimination under Title VII and the ADEA must file suit within 90 days of the receipt of a right to sue letter from the EEOC. *See Harvey v. City of New Bern Police Dept.*, 813 F.3d 652, 654 (4th Cir. 1987); *see also* 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e). This ninety-day time period has been strictly construed and, absent waiver, estoppel, or equitable tolling, a lawsuit filed in excess of the ninety-day period will be dismissed. *Lewis v. Norfolk S. Corp.*, 271 F.Supp.2d 807, 811 (E.D. Va. 2003) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392–93 (1982) (holding "that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a

6

requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.")).

The actual receipt of the Right-to-Sue Letter is not required to trigger the ninety-day limitations period because requiring such would allow some plaintiffs to have "open-ended time extension, subject to manipulation at will." *See Watts–Means v. Prince George's Family Crisis Ctr.,* 7 F.3d 40, 42 (4th Cir. 1993) (citation omitted) (holding that the limitations period was triggered when claimant received her notice that she could pick up a letter at the post office, not when she actually picked up the letter); *see also Harvey,* 813 F.2d at 654 (holding that the limitations period was triggered when claimant's wife received and signed for the Right-to-Sue Letter on behalf of the plaintiff, not when the plaintiff actually received the letter from his wife). Accordingly, when "the actual date of receipt is confirmed by evidence, that date governs," however, if "the date that a potential plaintiff received actual notice of right to sue is *disputed* or unknown," as in this case, Federal Rule of Civil Procedure 6(d) "creates the presumption that notice was received three days after it was mailed." *See Panyanouvong v. Vienna Wolftrap Hotel,* 525 F.Supp.2d 793, 796 (E.D. Va. 2007) (emphasis added); *see also Nguyen v. Inova Alexandria Hosp.*, 1999 WL 556446, at *3 (4th Cir. July 30, 1999) (unpublished) (finding that when the date on which the Right-to-Sue Letter was actually delivered is in dispute, the letter is presumed to have been delivered three days after it was mailed); *Beale v. Burlington Coat Factory,* 36 F.Supp.2d 702, 704 (E.D. Va. 1999) (recognizing in the context of a Title VII case the presumption created by Rule 6(d) that the right to sue letter was received three days after it was mailed). A plaintiff may rebut this presumption with contrary evidence. *Dyson v. Henrico Cty. Sch. Bd.*, 2020 WL 7398836, at *4 (E.D. Va. Dec. 16, 2020). However, a "plaintiff bears

7

the burden of demonstrating that he or she timely filed his or her claim after receiving notice from the EEOC of his or her right to sue." *Id.*

Here, Plaintiff has submitted in support of his position that he first received the NRTS Letter on November 6, 2020: (1) his declarations and testimony and that of his wife that they checked the mail regularly, [Doc. No. 12] at 3-4, [Doc. No. 12-1], [Doc. No. 22-1] at 3-4 (the "Moyer Declaration" or "Moyer Decl."); (2) an envelope postmarked October 28, 2020 which contained the NRTS Letter dated November 14, 2019, [Doc. No. 1-3] at 5; and (3) the Declaration of Plaintiff's attorney, Jonathan Nelson, [Doc. No. 22-4] at 2-3. In response, Defendant has submitted the EEOC Charge Detail Inquiry report, [Doc. No. 13-1] at 2-8.[2]

Plaintiff filed his charge of age discrimination with the EEOC on August 12, 2019. The EEOC mailed the NRTS Letter on November 14, 2019; and it was in fact received by Defendant's counsel and others shortly after that date. [Doc. No. 23-4] at 6 ("11/14/2019 . . . Original EEOC Form 161 mailed to Charging party, copy to Respondent . . . ."); *see also* Def.'s Mem. at 6; Pl.'s Opp'n at 5-6. The record also reflects that in November, 2019, there were contacts between the EEOC and the Plaintiff concerning the status of his charge. [Doc. No. 23-4] at 10. In that regard, the EEOC Charge Detail Inquiry report pertaining to Plaintiff's charge states that on November 12, 2019, there was a "CP [charging party] Contact/Interview" and "Final Determination Counseling," [Doc. No. 23-4] at 6, with a telephone conversation with the Plaintiff during which he was advised that the "tentative recommendation would be submitted based on [the assigned staff member's] analysis. He was told he could expect to receive a NRTS allowing him to file a suit 90 days upon receipt;" [Doc. No. 23-4] at 10 ("Subject 291 -

---

[2] Defendant contests the admissibility of the Nelson Declaration and Plaintiff contests the admissibility of the EEOC Charge Detail Inquiry report. The Court finds the Nelson affidavit admissible to the extent that it is based on personal knowledge and the EEOC Charge Detail Inquiry report [Doc. No. 24-4] admissible pursuant to Federal Rule of Evidence 803(6), based on the affidavit submitted by Mindy E. Weinstein. [Doc. No. 23-4].

Recommendation to close case"); and that on November 14, 2019, there was a "No Cause Finding Issued," [Doc. No. 23-4] at 5, the original NRTS Letter (EEOC Form 161) [Doc. No. 23-4] at 11, was mailed to Plaintiff on November 14, 2019, and that the only address on file for the Plaintiff is his correct Virginia address. The only other evidence are affidavits from the Plaintiff and his wife that they closely monitor the mail and did not receive the NRTS Letter until November 6, 2020; the affidavit of Nelson that states that his representation of Plaintiff ended on December 5, 2019 and that Plaintiff did not contact him until November 16, 2020 upon Plaintiff's receipt of the NRTS Letter [Doc. No. 22-4]; and the Plaintiff's testimony that in a phone call with an unidentified EEOC employee in March 2020, he was told that the NRTS Letter was sent to an address in Maryland, although there is nothing in the EEOC Charge Detail Inquiry report that would corroborate that testimony, including the lack of any address for Plaintiff other than his correct Virginia address. Based on this record, the Plaintiff has failed to rebut the presumption that he received the NRTS Letter three days after it was mailed on November 14, 2019.

Plaintiff's evidence essentially boils down to his own and his wife's declaration that he never received the letter and an uncorroborated conversation he had with someone from the EEOC, unsupported by the EEOC's own records, who said the letter had been sent to a Maryland address. Courts have consistently concluded that the presumption is not rebutted through self-serving affidavits that simply state that the claimant never received a Right-to-Sue Letter. Rather, courts look for evidence of an actual date of receipt beyond the presumed three days. The Second Circuit, for example, determined that "[i]f a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail,

9

the initial presumption is not dispositive[,]" noting as sufficient evidence of a copy of the letter with "stamps indicat[ing] the timing of [the petitioner's] own receipt of the letter[.]" *See Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 526 (2d Cir. 1996).

In *Smith v. N. Virginia Orthodonics Ctr., LLC,* 2019 WL 3225686 at *3 (E.D. Va. 2019), the Court considered the claim Plaintiff makes here—that he has through his affidavits rebutted the presumption of receipt:

> The question here is whether plaintiff's three affidavits are sufficient to rebut the presumption. They are not. To begin with, plaintiff's own conclusory affidavit is entirely self-serving and insufficient standing alone to rebut the presumption. As the Fourth Circuit has held, '[a] selfserving affidavit, without more, is not sufficient to defeat summary judgment.' *Jeadron v. Bd. of Regents of Univ. Sys. of Md.*, 510 F. App'x 223, 228 (4th Cir. Feb. 14, 2013) (unpublished). Other courts have reached the same result and rejected attempts to rebut the three-day presumption through a self-serving affidavit. *See, e.g., Lombardi v. Advantage Logistics USA West, LLC,* No. 11-cv-2467, 2012 WL 2319094, at *2 (D. Colo. June 19, 2012) ("Mr. Price's bald assertions, even as sworn statements, do not suffice to rebut the presumption . . ."). Plaintiff's own affidavit is therefore insufficient to rebut the three-day receipt of mail presumption.

> *Id.* (alterations in original and collecting cases).

And for the same reasons that courts reject the sufficiency of a claimant's declaration that he never received a NRTS Letter, viz., the prospects for "open-ended time extension, subject to manipulation at will," *Watts–Means,* 7 F.3d at 42, the Court must find equally insufficient based on this record Plaintiff's testimony, even if admissible hearsay, concerning his conversation with the unnamed EEOC employee in March, 2020. Given Plaintiff's failure to rebut the presumption of receipt, Plaintiff must establish that he timely filed this action on January 14, 2021 based on the doctrine of equitable tolling.

## B. Equitable Tolling

The strictness and harshness of the three day presumption is tempered by the doctrine of equitable tolling. *See Harvey,* 813 F.2d at 653–54. Equitable tolling, however, is a demanding

doctrine, "reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (internal quotation marks omitted).  In order to demonstrate entitlement to equitable tolling, Plaintiff must "present (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *United States v. Sosa,* 364 F.3d 507, 512 (4th Cir. 2004) (internal quotation marks omitted); *see also Dyson*, 2020 WL 7398836, at *4 ("The doctrine of equitable tolling is to be employed 'sparingly.'" (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 90 (1990))); *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (cautioning against the expanded use of the equitable tolling doctrine, stating that "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.") (citation and quotation marks omitted).

Plaintiff claims that he is entitled to equitable tolling because "(1) Plaintiff exercised an extraordinary level of diligence and persistence in seeking information about his case, (2) the nonresponsiveness of EEOC representatives was not due to any fault of the Plaintiff, and (3) Plaintiff had no control over circumstances external to his case, such as the effects of the [COVID-19] Pandemic." Pl.'s Mem. at 11.  Defendant contends that the record is devoid of any evidence that Plaintiff diligently pursued his claim, outside of several phone calls beginning on July 15, 2020 through October 2020.

Plaintiff filed his charge on August 12, 2019 and could have filed this action as early as October 11, 2019, without obtaining a NRTS Letter.[3]  It also appears that he was told on

---

[3] *See* 29 C.F.R. § 1626.18(b) ("An aggrieved person whose claims are the subject of a timely pending charge may file a civil action at any time after 60 days have elapsed from the filing of the charge with the Commission (or as

November 12, 2019 that his charge would be dismissed and he should expect a NRTS Letter. [Doc. No. 23-4] at 10. Nevertheless, Plaintiff waited until sometime in March 2020 to inquire as to the status of his claim, some five months from the date in which he could have filed suit and four months after being told his charge would be dismissed. *See Panyanouvong,* 525 F.Supp.2d at 798 (finding plaintiff's nine-month delay in following up with the EEOC about the status of her claim was not due diligence and "Plaintiff's lack of diligence is further highlighted by the fact that she did not have to wait until the EEOC issued the Notice to file suit."). More importantly, Plaintiff was placed on notice in March, 2020 that his EEOC claim had, in fact, been dismissed and that the NRTS Letter had been sent. He then waited an additional ten months to file suit. *See* Compl. (suit filed January 14, 2021).

Plaintiff points to his attempts after March, 2020 to again contact the EEOC, but he delayed even those attempts for approximately four months. In *Collins,* this Court observed that "the fact that Plaintiff learned of the NRTS by telephone and did not actually receive a copy in the mail does not excuse plaintiff's inaction [and] [t]he Fourth Circuit has rejected 'actual receipt' as the operative event on the reasoning that an actual receipt requirement would allow plaintiffs 'open-ended time extension, subject to manipulation at will.'" *Collins,* 2011 WL 1167199, at *3.[4] As in *Collins,* "the proper focus in this case is on Plaintiff's knowledge that the

---

provided in § 1626.12) without waiting for a Notice of Dismissal or Termination to be issued.");
*Panyanouvong,* 525 F.Supp.2d at 796 ("[A] potential ADEA plaintiff 'whose claims are the subject of a timely pending charge may file a civil action at any time after 60 days have elapsed from the filing of the charge with the Commission . . . without waiting for a Notice of Dismissal or Termination to be issued.'") (quoting 29 C.F.R. § 1626.18(b)); *see also supra* Section I ¶ 2 (stating that the Charge of Discrimination was electronically signed on August 12, 2019, which would have allowed Plaintiff to file his civil suit as early as October 11, 2019);.
[4] *See also Collins,* 2011 WL 1167199, at *3 (citing *Harvey,* 813 F.2d at 654; *Watts–Means,* 7 F.3d at 40 (finding limitations period triggered when claimant received notice that she could pick up her letter at the post office, not when she actually received the notice); *Harper v. Burgess,* 701 F.2d 29, 30 (4th Cir. 1983) (finding no equitable tolling where plaintiff failed to notify the EEOC of an address change and did not personally receive the right to sue letter); *Griffin v. Prince William Hospital Corp.,* 716 F.Supp. 919, 921–22 (E.D. Va. 1989) (finding that the EEOC mailed the right-to-sue letter to plaintiff at his address of record and that was enough to trigger the 90 day period although the actual notice of a right to sue was returned as unclaimed and her attorney received notice only several weeks later)).

EEOC had issued the NRTS," and "[o]ne who fails to act diligently cannot invoke equitable principles to excuse lack of diligence." *Id.* at *4-5. Here, it appears that as early as November, 2019, Plaintiff had notice that his case would be dismissed and a NRTS Letter would be forth coming and that "Plaintiff had actual knowledge . . . that the EEOC had issued the NRTS and with that knowledge did nothing to advance h[is] claim . . . " for approximately ten months, i.e. January 14, 2021 when he filed his Complaint. *See id.* at *4-5 (finding a nine month delay insufficient for equitable tolling). Based on these facts, Plaintiff failed to exercise the diligence required under the doctrine of equitable tolling. *See Debreu v. UPS*, 2018 WL 6329316, at *3–4 (D. Md. Dec. 3, 2018) (dismissing complaint because plaintiff failed to file suit within ninety (90) days after EEOC informed plaintiff via email that his charge had been dismissed even though plaintiff claimed he did not receive actual letter until two years later).

Plaintiff relies on *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 320–21 (4th Cir. 2011), to support his claim of equitable tolling.[5] In *Crabill*, the EEOC mailed the plaintiff a right-to-sue notice on April 22, 2008, but plaintiff submitted evidence to show that neither she nor her attorney ever received her NRTS Letter when it was originally sent by the EEOC. *Id.* at 320. On August 19, 2008, three months after the NRTS Letter was issued, the plaintiff's attorney followed up with the EEOC and learned that the plaintiff's charge had been dismissed. *Id.* "After requesting the EEOC resend a copy of the letter, [the plaintiff] received the [NRTS Letter] in September 2008" and then promptly filed her complaint on November 12, 2008. *Id.* The Fourth Circuit affirmed the district court's conclusion that equitable tolling excused the plaintiff's untimely filing of her suit. In particular, the Court tolled the period between April and August 2009 and accepted as timely Plaintiff's filing within 90-days of

---

[5] Plaintiff did not cite to *Crabill* in its brief, but at the hearing on the Motions. *See generally* Pl.'s Mem.; Pl.'s Opp'n.

August 19, 2008, the date on which plaintiff, through counsel, learned that the charge had been dismissed. It also cited to the Plaintiff's "diligen[ce] in maintaining contact with her counsel regarding the status of her case." *Id.* at 321.

Here, Plaintiff filed his charge on August 12, 2019 and then waited until March 2020—eight months later—to make his first follow-up phone call with the EEOC, even though he had been told in November, 2019, that the dismissal of his charge was imminent. After learning in March, 2020, that his charge had, in fact, been dismissed the previous November, he again did nothing for 4 months[6] and failed to file suit within 90-days of learning that his charge had been dismissed. Nor can Plaintiff's efforts after July 15, 2020 excuse his lack of diligence following his learning of the dismissal of his charge in March, 2020. If anything, his conduct underscores his lack of the required level of diligence since he continued to delay the filing of suit until January 14, 2021, even after he was not successful in speaking to the EEOC until September 3, 2020, and had received a copy of the NRTS Letter by e-mail on October 27, 2020.[7] In short, even were the time period tolled from November, 2019 through March, 2020, Plaintiff failed to act with sufficient diligence when he did not file his action until January, 2021, some 10 months after receiving actual notice that his charge had been dismissed.

For the above reasons, Plaintiff has not established the timely filing of this action under the doctrine of equitable tolling.[8]

## IV.   CONCLUSION

---

[6] It appears that Plaintiff did speak with his lawyer on June 26, 2020 but he cannot recall the substance of that conversation.

[7] His lack of diligence is also reflected by his interactions with counsel. For example, Plaintiff concedes that he spoke with his lawyer, Mr. Nelson, on August 5, 2020, and November 16, 2020 (although he cannot recall what was discussed); and he has not stated what efforts he made to obtain counsel for his claim or when he retained his counsel of record in this case.

[8] At the hearing, Plaintiff referenced the pandemic as an additional circumstance that supported his claim for equitable tolling. However, based on the record, the Court cannot find any pandemic related basis justifying his lack of the required diligence.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that Plaintiff Robert H. Moyer's Cross Motion for Summary Judgment [Doc. No. 21] be, and the same hereby is, **DENIED**; and it is further

ORDERED that Defendant Shirley Contracting Company, LLC's Cross Motion for Summary Judgment [Doc. No. 23] be, and the same hereby is, **GRANTED** and this matter is dismissed.

The Clerk is directed to enter judgment pursuant to Rule 58 in accordance with this Order and forward a copy of this Order to all counsel of record.

_____/s/_____

Anthony J. Trenga
United States District Court

Alexandria, Virginia
August 18, 2021

15